## THE FARNSWORTH.*

(*District Court, E. D. Pennsylvania.* February 21, 1881.)

1. COLLISION—GROUNDING OF SHIP IN TOW OF TUG—LIABILITY OF TUG FOR ACCIDENT CAUSED BY ITS NEGLIGENCE—DUTY TO ANCHOR IF UNABLE TO PROCEED SAFELY.

A tug, with a ship in tow, was approaching a sharp curve in a river with an ebb tide sweeping across from the east. Seeing another tow ahead going in the same direction the tug slackened her pace. The ship shortly afterwards grounded on the western shore. *Held*, that as it appeared from the evidence that the accident was caused by the slow pace of the tug, and her failure to keep to the eastern side of the channel, she was liable for the damage. *Held, further*, that if the vessels ahead could not have been passed at that point, and it was necessary to slow down to a pace not sufficient to afford proper steerage way to the ship, the master of the tug should have considered the propriety of dropping anchor.

Libel by the master of the ship Josephine against the tug Farnsworth, to recover damages caused by the grounding of the ship while being towed by the tug. The accident occurred June 25, 1880, while the ship was being towed by the tug up the Schuylkill river. The vessels were approaching a curve in the river, and just ahead was a tow of canal-boats bound in the same direction. The tug slackened her pace and shortened the hawser with which the ship was being towed, and shortly afterwards the ship grounded. The other facts are sufficiently stated in the opinion. The theory of libellant was that the accident was caused by the tug keeping too near to the western shore, and attempting to round the curve with the ship in tow on a slack hawser. The theory of respondents was that the accident occurred through the failure of the ship to obey the signals of the tug and to steer in her wake.

*Alfred Driver* and *J. Warren Coulston*, for libellant.

*H. C. Brown* and *Edward F. Pugh*, for respondents.

BUTLER, D. J. It is not difficult to ascertain the cause of grounding. Approaching a sharp curve in the river, where the ebb tide sweeps across from the east, the tug ran up the western side of the channel at a pace scarcely suffi-

*Reported by Frank P. Prichard, Esq., of the Philadelphia bar.

cient to tighten the hawser, or afford "steerage way" to the ship, and the current consequently swept her ashore.   The allegation that the ship was mismanaged by those on board, is not sustained by the proofs.   The witnesses having the best opportunity of knowing, say the crew of the ship did all that could be done to keep her afloat.   The very short distance between the tug and the ship, when the latter grounded, shows conclusively, that the former was well over to the western side of the channel, (her officers testify that she was west of the center,) while the condition of the tide made it important to keep to the eastern side.   The failure in this respect, and the very slow pace at which the tug moved, produced the disaster.   If vessels were ahead, which could not be passed at that point, and should not be overtaken, as is alleged, and the pace was not sufficient to afford proper steerage way to the ship, and enable her to keep in the wake of the tug, the master of the latter should have considered the propriety of dropping anchor, and waiting till the course was clear.

A decree must therefore be entered for the libellant accordingly.